IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CANDICE TUTTLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| | ) | |
| TRIAGELOGIC, LLC, | ) | |
| | ) | <u>JURY TRIAL DEMANDED</u> |
| Defendant. | ) | |

## **<u>COMPLAINT</u>**

PLAINTIFF CANDICE TUTTLE (hereinafter "Plaintiff") by her attorneys Goddard Law PLLC, alleges upon knowledge with respect to herself, and upon information and belief as to all other matters, as follows:

## **<u>PRELIMINARY STATEMENT</u>**

1.

This is a civil action brought on behalf of Plaintiff against her former employer Defendant TriageLogic, LLC (hereinafter "Defendant TriageLogic") to remedy claims of gender discrimination, disability discrimination, pregnancy discrimination, and unequal pay in violation of Title VII of the Civil Rights Act of 1964, as amended; the Pregnancy Discrimination Act, 42 U.S.C. §§ 2000e *et seq*., the Americans with Disabilities Act, the Florida Civil Rights Act, Chapter 760, FLA.

1

STAT. and Fla. Stat. Ann. § 448.07. As well as labor law violations, including unpaid wages and unpaid overtime wages in violation of the FLSA, 29 U.S.C. § 207 and Fla. Stat Chapter 448, together with any and all other causes of action which can be reasonably inferred from the facts as set forth below.

## PARTIES

2.

Plaintiff is a female citizen of the United States who resides in Savannah, Georgia and who was formerly employed by Defendant TriageLogic. Plaintiff was subjected to gender, disability, and pregnancy discrimination that resulted, ultimately, in her wrongful termination from Defendant TriageLogic.

3.

At all relevant times, Plaintiff suffered from gestational diabetes. Plaintiff is a single mother by choice and used intrauterine insemination ("IUI") to become pregnant.

4.

Upon information and belief, at all times relevant herein, Defendant TriageLogic is and has been a corporation licensed in Delaware and registered to do business under the laws of the State of Florida, with more than 15 employees. Upon information and belief, Defendant TriageLogic's corporate headquarters are located at 8834 Goodbys Executive Drive, Suite 1, Jacksonville, Florida 32217.

5.

Plaintiff is, and was, at all times relevant herein, Defendant TriageLogic's "employee" within the meaning of all Federal, State and local laws.  At all relevant times, Defendant TriageLogic employed more than 15 employees.[1]

6.

Defendant was, at all times relevant herein, Plaintiff's "employer," within the meaning of all relevant Federal, State and local laws.

7.

Plaintiff was willing and able to perform her essential employment duties and obligations and was qualified for the employment position she held with Defendants.

8.

Defendants subjected Plaintiff to a hostile work environment and discriminated and retaliated against her due to her gender, disability and pregnancy, in violation of federal, state, and local laws.

## **JURISDICTION AND VENUE**

9.

The Court has federal-question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

---

[1] Upon information and belief, Defendant wrongly misclassifies its employees as independent contractors, though the employees are given set work hours and have all of the responsibilities and obligations as employees.

10.

The violations of Plaintiff's rights occurred in the Northern District of Georgia. Venue for this action in the Northern District of Georgia under 28 U.S.C. § 1391(b) is appropriate because a substantial part of the events or omissions, and the unlawful actions and practices which give rise to Plaintiff's claims, occurred in this District.

**SATISFACTION OF ADMINISTRATIVE REQUIREMENTS**

11.

All conditions precedent to filing the instant action have been fulfilled. On or about June 23, 2022, Plaintiff timely filed a Charge of Discrimination with the Atlanta district office of the Equal Employment Opportunity Commission ("EEOC") alleging claims of sex discrimination, pregnancy discrimination, and disability discrimination. On or about August 30, 2023, the EEOC issued Plaintiff a Notice of Right to Sue. This action is being brought within 90 days of Plaintiff's receipt of her Notice of Right to Sue.

## FACTUAL ALLEGATIONS

### Plaintiff Masters the Skills She is Trained
### on for Her New Role with Defendant TriageLogic

12.

In or about December of 2021, Plaintiff accepted a remote position with Defendant TriageLogic as a Customer Service Information Technology ("IT") Support person.

13.

Defendant TriageLogic is a telehealth company, which means that they ensure "access to health care services remotely.[2]"

14.

Plaintiff was told in her interview for the role that the position would be remote. Defendant TriageLogic knew that Plaintiff was based in Georgia and nonetheless interviewed Plaintiff. Defendant Triage Logic offered Plaintiff the position with the knowledge that she lived outside of Florida. Plaintiff was also told that 3 of the 4 IT positions were fully remote, but that one IT person happened to live in town.

---

[2] https://www.mayoclinic.org/healthy-lifestyle/consumer-health/in-depth/telehealth/art-20044878

15.

Defendant TriageLogic repeatedly stated during the interview process that the job was a remote position and that there were no travel or on-site work responsibilities for the job.

16.

Defendant TriageLogic asked Plaintiff in her interview whether she had the capability to work from home, whether she had a computer and internet access in order to work from home, and whether she had a place she could work undisturbed while working from home should she be hired. Plaintiff responded in the affirmative.

17.

Plaintiff was specifically told that she did not even have to travel to Defendant TriageLogic for training, though she was ready willing and able to do so. Defendant TriageLogic assured her that all training necessary for her job could be done remotely via Zoom.

18.

Plaintiff only went to Defendant TriageLogic's office once, in January 2022, and there were only four (4) workstations and one receptionist desk. Upon information and belief, there was no room for Plaintiff to work in Defendant's office.

19.

Plaintiff had a starting salary of $37,440.00 per year. Upon information and belief, Plaintiff was paid less than male employees in similar roles. Upon information and belief, male employees are generally paid more than female employees at Defendant TriageLogic.

20.

Plaintiff flourished as an IT support person with Defendant TriageLogic and had a strong working relationship with her colleagues.

21.

In or about 2019, upon information and belief, Defendant TriageLogic employed approximately sixty (60) individuals, including Human Resources ("HR") Representative Amanda Hodges ("HR Representative Hodges"), as well as three other IT employees, IT Manager Cody Stanley ("IT Manager Stanley"), IT Support Manager Rose Moon, ("IT Support Manager Moon") Director of IT Joel Gathercole ("Director of IT Gathercole"), and the co-owners of the Company, Doctor Ravi Raheja ("Owner Dr. Ravi Raheja") and Charu Raheja ("Owner Charu Raheja").

22.

Upon information and belief, Owner Dr. Ravi Raheja and Owner Charu Raheja are a married couple who have children.

**Defendant TriageLogic Proudly Offers Remote Working**

23.

Upon information and belief, IT Support Manager Moon lives in the Northwest and her position with Defendant TriageLogic is fully remote.

24.

Upon information and belief, Director of IT Gathercole's position with Defendant TriageLogic is fully remote.

25.

Upon information and belief, Defendant TriageLogic prides itself on being a remote-work technology company and boasts on its website that "Our remote work from home policy allows you to achieve a work life balance, while technology helps us stay connected and work together." **(See: Exhibit A).**

**Plaintiff and Defendant TriageLogic's
Co-Owners Have a Positive Working Relationship**

26.

Owner Dr. Ravi Raheja and Owner Charu Raheja would consistently check in with Plaintiff over the course of her time working for Defendant TriageLogic by asking many questions, including but not limited to the following: "How are you doing so far?" "How are you settling in?"; "Is there anything we can help you with?"; "How are you liking the job so far?".

8

27.

Owner Dr. Ravi Raheja, and Owner Charu Raheja directly checked in with Plaintiff over zoom calls and also asked her multiple questions during Defendant's "Morning Greeting Meetings," which happened every week on Mondays and Wednesdays.

28.

Plaintiff enjoyed a friendly and kind working relationship with Owner Dr. Ravi Raheja, and Owner Charu Raheja, and Plaintiff felt very welcome.

**Plaintiff Continually Asks for Additional Help
and Training from Her Immediate Supervisor**

29.

Plaintiff reported directly to IT Manager Stanley for the majority of her time working for Defendant TriageLogic. Because Defendant TriageLogic's IT Department is extremely busy, it was difficult for IT Manager Stanley to find time to train Plaintiff. Though it was difficult to get IT Manager Stanley's attention, Plaintiff did feel much job security given that the IT department was so busy.

30.

Plaintiff was assigned a training sheet upon the start of her time with Defendant TriageLogic. Upon information and belief, IT Manager Stanley was responsible for facilitating these trainings with Plaintiff.

31.

In order to adhere to her training schedule, even though it was not her responsibility to do so, Plaintiff repeatedly reached out to IT Manager Stanley so that she could learn what she needed to in order to help Defendant TriageLogic as much as possible.

### Plaintiff is Forced to Work After Hours
### Without Compensation and/or Overtime

32.

On or about January 19, 2022, Plaintiff was required to attend a meeting with co-workers "after hours" over zoom. Defendant TriageLogic regularly ordered employees to attend work events for which they were not compensated at all, let alone at time and a half.

### Plaintiff Discloses her Pregnancy to Defendant TriageLogic

33.

This time, the employees were asked by Owner Charu Raheja to create "vision boards" as a creative exercise to get to know each other. Each employee was asked to explain their vision boards to the entire staff on the zoom meeting.

34.

Owner Dr. Ravi Raheja, and Owner Charu Raheja gave everyone positive feedback on their boards and acted warm and welcoming to the employees, as if they were interested in their lives and cared about them.

35.

When it was Plaintiff's turn to present her vision board, as one of the last employees to go, she explained that she had included the word "Relax" because she was pregnant, and that she would not have much time to relax after giving birth.

### Defendant TriageLogic's Owners Are Visibly Unhappy About Plaintiff's Pregnancy

36.

After they learned that she was pregnant, her coworkers fell into a stunned and awkward silence. Floored and humiliated by their silence, Plaintiff immediately felt scared and embarrassed. Plaintiff felt herself blushing out of embarrassment and rushed through the rest of her vision board in order to stop talking and avoid more uncomfortable feelings. After she was done speaking, some staff awkwardly congratulated Plaintiff on her pregnancy, however, Owner Dr. Ravi Raheja, and Owner Charu Raheja said nothing.

37.

The colleagues who went before Plaintiff were welcomed with positive affirmations and appreciation for sharing. They were told their vision boards looked "amazing" and "awesome" and there was upbeat music playing throughout them sharing. Owner Dr. Ravi Raheja and Owner Charu Raheja gave positive feedback to Plaintiff's colleagues; however, they did not give Plaintiff any of the positive and warm feedback and encouragement that they had given the employees who went

before her. The music and upbeat nature of the meeting stopped, and the entire tone and demeanor of the meeting changed. Following her pregnancy announcement, Owner Dr. Ravi Raheja and Owner Charu Raheja both appeared to be in a sour mood. They rushed through the meeting following Plaintiff's pregnancy news.

38.

After the meeting, Plaintiff was so upset that she reached out to a colleague to get advice on how to handle Owner Dr. Ravi Raheja and Owner Charu Raheja's negative reaction to her pregnancy announcement. Plaintiff's colleague corroborated her fears that the reactions were negative and that the tone of the meeting shifted in a very negative manner after Plaintiff revealed her pregnancy.

**Plaintiff is Treated Coldly and Subsequently
Interrogated about her Pregnancy by Defendant
Immediately Following Her Pregnancy Announcement**

39.

The following workday, January 20, 2022, was oddly quiet. Plaintiff received barely any phone calls or emails over the course of her workday. Upon information and belief, Defendant TriageLogic was no longer interested in developing Plaintiff due to her pregnancy.

40.

On or about January 21, 2022, Plaintiff drove down to Florida with another colleague for an in-person meeting with the team.

12

41.

Defendant TriageLogic stated that they invited the team to meet in person because they all were, and would continue to be, working remotely.

42.

Plaintiff attended a lunch in Florida with Owner Dr. Ravi Raheja, Owner Charu Raheja, IT Manager Stanley, HR Representative Hodges and Barbie Roe ("Roe"), who is a close friend of Plaintiff.

### Dr. Ravi Raheja Violates HIPAA and Reacts
### Negatively to Plaintiff's Gestational Diabetes

43.

Plaintiff has Gestational Diabetes and needs insulin shots for her condition.

44.

Before eating lunch, Roe and Plaintiff got up to go to the bathroom and pulled out an insulin shot so Roe could administer Plaintiff's insulin shot.

45.

When he saw the insulin shot, Owner Dr. Ravi Raheja asked Plaintiff "is that [the diabetes] because of the pregnancy?" Plaintiff, surprised that a doctor who runs a medical community and is intimately familiar with HIPAA, would ask her questions about her pregnancy, pregnancy complication, and private medical information in front of her coworkers, responded that it was and then quickly

escaped to the bathroom where she suffered severe anxiety and panic about her job security.

**Plaintiff Returns to the Lunch and Continues to be Interrogated**
**with Hostile Questions About her Pregnancy as an Unmarried Woman**

46.

As soon as Plaintiff sat back down after receiving her insulin shot, Owner Charu Raheja immediately loudly asked Plaintiff, from the other end of the table and in front of all of her coworkers and the company's head of HR, "What is your living situation?" in a very suspicious tone. Notably, she did not ask any of the non-pregnant employees what their living situations were.

47.

When Plaintiff appeared visibly confused, and stammered to answer, Owner Charu Raheja impatiently cut to the chase and asked, "Who do you live with?," making it obvious that she wanted to know whether Plaintiff lived with the father of her child. Upon information and belief, if she were married, she would not have been asked this question.

48.

Plaintiff, totally caught off guard and not wanting to answer such personal invasive questions about her personal life, responded, "I live in a zoo, I have a lot of animals." She then tried to immediately change the conversation by saying, "I have a cat who lost his leg to cancer last year, and I spent a lot of time taking care of him."

14

49.

Owner Charu Raheja did not respond in any way, but instead appeared visibly annoyed and was extremely quiet the rest of the lunch.  It was obvious that Owner Charu Raheja wanted to know whether Plaintiff lived with the father of her unborn child.

50.

Plaintiff turned bright red and became extremely embarrassed, anxious, and humiliated. Owner Charu Raheja asked Plaintiff these invasive questions in front of fellow staff members, most of whom Plaintiff was meeting in person for the first time.

51.

Plaintiff was embarrassed by the questions and the invasion of her privacy and felt extremely uncomfortable.

**Defendant's HR Representative**
**Apologizes for Defendant's Unlawful Questions**

52.

After the lunch, Plaintiff was told by HR Representative Hodges: that she could not believe the Owners would ask her such questions and that the line of questioning was inappropriate.

53.

Plaintiff was extremely afraid to say anything to the Owners about the incident.

54.

Plaintiff thought about reporting this incident but had not received an employee handbook or any other type of document outlining the company policies, practices, and procedures, including but not limited to anti-discrimination policies or posters, either upon hiring or for the duration of her time working for Defendant TriageLogic.

**Plaintiff is Ignored at Work After Revealing She is A Pregnant Single Person**

55.

After Plaintiff revealed her pregnancy and then was forced to reveal her gestational diabetes and the fact that she was not married or living with the father of her child, Owner Charu Raheja and Dr. Ravi Raheja stopped speaking to Plaintiff entirely.

56.

During the "Morning Meeting Greetings" on Mondays and Wednesdays of each week, Owner Dr. Ravi Raheja and Owner Charu Raheja checked in directly with every other staff member except Plaintiff. Upon information and belief, neither

owner ever asked Plaintiff any questions about how she was or how she was doing at any time thereafter.

57.

Plaintiff felt extremely uncomfortable and confused that co-owners Charu Raheja and Ravi Raheja, who previously regularly checked in with her and supported her diligently and kindly, were now coldly ignoring her in front of all her colleagues.

58.

While Plaintiff had sporadic scheduling with IT Manager Stanley before she revealed she was pregnant, he stopped training her or helping her entirely after she revealed she was pregnant. This further compounded Plaintiff's stress about her pregnancy announcement and led her to fear for her job security.

59.

On or about mid-March 2022, Plaintiff was assigned to be "on call," which meant that she was required to be available to work at any time during the hours of 9:00 A.M. – 5:00 P.M. for the entirety of Saturday and Sunday of that week. During this weekend when Plaintiff was on call, she received an inquiry that needed immediate attention. She sought out guidance from IT Manager Stanley and reached out to him via phone and also left a voicemail. She never heard back from IT Manager Stanley.

60.

Plaintiff was never paid for these hours. Upon information and belief, instead of paying her for these extra hours worked, Defendant TriageLogic would compensate Plaintiff with four (4) hours of Paid Time Off ("PTO") for her labor of being on call for an entire weekend. Upon information and belief, Plaintiff was never compensated for this weekend in PTO or otherwise.

61.

Plaintiff reached out to HR to let them know that she was not getting the training that she needed, but neither HR nor the Owners of Defendant TriageLogic remained committed to her success at her job once she disclosed that she was pregnant and living alone.

**Plaintiff Receives a Negative Performance Review
After Revealing She is A Pregnant Single Person**

62.

On or about March 24, 2022, Plaintiff had a performance review meeting with HR Representative Hodges, IT Support Manager Moon, and Owner Dr. Ravi Raheja.

63.

Plaintiff was told in the performance review that she needed to be more proactive and assertive in requesting training from her supervisor, IT Manager Stanley.

64.

IT Manager Stanley was not at the performance review.

65.

Plaintiff asked for a copy of her review. Plaintiff was supposed to receive an email with a copy of the performance review but never received it, ignoring her attempts to better improve her own performance yet again.

66.

Plaintiff asked what she should do if and when IT Manager Stanley did not answer her calls, texts, zoom calls, and/or messages. Rose Moon told Plaintiff to wait ten (10) minutes and if IT Manager Stanley didn't answer to reach out to the Customer Service chat.

**Plaintiff Seeks Out More Training Per Her
Review Feedback and Is Met with Further Issues**

67.

On or about March 25, 2022, Plaintiff attended an IT Staff meeting with her supervisor, IT Manager Stanley.

68.

Per Plaintiff's review, the previous day, she proactively asked IT Manager Stanley to provide her with more training at the meeting.

69.

Instead of IT Manager Stanley providing Plaintiff with additional training like she asked for, he ignored her request and stated that he would send Plaintiff new information that needed to be added to the database by 1:00 P.M. that day.

70.

Plaintiff did not hear from Defendant Stanley by 1:00 P.M. that day.

71.

Plaintiff reached out to Defendant Stanley a little after 1:00 P.M. to check in and ask for the protocol.

72.

Defendant Stanley did not reply to Plaintiff until 3:30 P.M. that day.

**Defendants Unlawfully Terminate Plaintiff**

73.

On or about March 31, 2022, Plaintiff was unexpectedly invited to a Zoom meeting with Owner Dr. Ravi Raheja and HR Representative Hodges. Plaintiff received only a few hours advance notice of the meeting and was not told what it would be about.

74.

Plaintiff was nervous when she saw the meeting on her calendar and feared for her job. Plaintiff asked HR Representative Hodges if she should be worried. HR

20

Representative Hodges told Plaintiff she also did not know what the meeting was about.

75.

Plaintiff thought that the call was possibly to discuss her performance review. Just as she feared, Owner Dr. Ravi Raheja informed her on the call that she was being laid off. Owner Dr. Ravi Raheja disingenuously claimed that it was because Plaintiff's IT role was not a good fit for a remote, work from home position, but upon information and belief, Defendant TriageLogic would not have terminated her if she was not pregnant.

76.

The entire meeting lasted about five (5) minutes.

77.

Upon information and belief, Plaintiff was terminated because of her pregnancy.

78.

Upon information and belief, no one from Defendant TriageLogic's IT Department was let go around that time except for Plaintiff, even though most of the team works remotely.

79.

Upon information and belief, Gathercole, Director of IT for Defendant TriageLogic, currently works remotely and has not had any change in his job duties, nor has he been terminated because he is performing an IT role remotely.  Upon information and belief, he is also paid more than Plaintiff.

80.

Upon information and belief, Moon, IT Support Manager for Defendant TriageLogic, currently works remotely and has not had any change in her job duties, nor has she been terminated because she is performing an IT role remotely.

## COUNT I

*(Gender Discrimination in Violation of Title VII)*

81.

Plaintiff incorporates herein by reference paragraphs 1 through 80 of the Complaint.

82.

Defendant TriageLogic has discriminated against Plaintiff in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq., as amended by the Civil Rights Act of 1991 ("Title VII"). Plaintiff has suffered disparate treatment as a result of Defendant's wrongful conduct.

83.

Defendant TriageLogic has discriminated against Plaintiff by treating her differently from and less preferably than similarly-situated male employees by subjecting her to disparate terms and conditions of employment on the basis of her gender.

84.

Defendant TriageLogic's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Plaintiff, entitling Plaintiff to punitive damages.

85.

By reason of Defendant TriageLogic's discrimination, Plaintiff is entitled to all remedies available for violations of Title VII.

## **COUNT II**

*(Pregnancy Discrimination in Violation of Title VII as Amended by the PDA)*

86.

Plaintiff incorporates herein by reference paragraphs 1 through 85 of the Complaint.

87.

Defendant TriageLogic has discriminated against Plaintiff in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq., as amended by the Civil

Rights Act of 1991 ("Title VII") and the Pregnancy Discrimination Act, 42 U.S.C. §§ 2000e *et seq*., ("PDA"). Plaintiff has suffered disparate treatment as a result of Defendant TriageLogic's wrongful conduct.

88.

Defendant TriageLogic has discriminated against Plaintiff by treating her differently from and less preferably than similarly-situated non-pregnant employees by subjecting her to disparate terms and conditions of employment on the basis of her pregnancy.

89.

Defendant TriageLogic's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Plaintiff, entitling Plaintiff to punitive damages.

90.

By reason of Defendant TriageLogic's discrimination, Plaintiff is entitled to all remedies available for violations of Title VII as amended by the PDA.

## **COUNT III**

*(Disability Discrimination in Violation of the ADA)*

91.

Plaintiff incorporates herein by reference paragraphs 1 through 90 of the Complaint.

92.

Defendant TriageLogic has discriminated against Plaintiff in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"). Plaintiff has suffered disparate treatment as a result of Defendant TriageLogic's wrongful conduct.

93.

Defendant TriageLogic has discriminated against Plaintiff by treating her differently from and less preferably than similarly-situated non-disabled employees by subjecting her to disparate terms and conditions of employment on the basis of her disability.

94.

Defendant TriageLogic's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Plaintiff, entitling Plaintiff to punitive damages.

95.

By reason of Defendant TriageLogic's discrimination, Plaintiff is entitled to all remedies available for violations of the ADA.

## COUNT IV

*(Sex and Pregnancy Discrimination in Violation of the FCRA)*

96.

Plaintiff incorporates herein by reference paragraphs 1 through 95 of the Complaint.

97.

Defendant TriageLogic, by and through its agents and employees, has discriminated against Plaintiff in violation of the Florida Civil Rights Act, Chapter 760, FLA. STAT.

98.

Defendant TriageLogic has discriminated against Plaintiff based on her sex and pregnancy by treating her differently from and less preferably than similarly-situated non-pregnant and male employees and by subjecting her to discriminatory pay, disparate terms and conditions of employment, termination of her employment, and other forms of discrimination on the basis of her sex and pregnancy in violation of the law.

99.

The conduct of Defendant TriageLogic and its agents, and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering,

26

humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

100.

The conduct of Defendant TriageLogic was so willful and wanton, and in such reckless disregard of the statutory rights of Plaintiff, as to entitle her to an award of punitive damages against Defendant TriageLogic, to deter it, and others, from such conduct in the future.

101.

Plaintiff is entitled to recover her reasonable attorneys' fees and litigation expenses pursuant to 760.11(5), FLA. STAT.

102.

Plaintiff has no plain, adequate or complete remedy at law for the actions of Defendant TriageLogic which have caused, and continue to cause, irreparable harm.

## COUNT V

*(Disability Discrimination in Violation of the FCRA)*

103.

Plaintiff incorporates herein by reference paragraphs 1 through 102 of the Complaint.

104.

Defendant TriageLogic, by and through its agents and employees, has discriminated against Plaintiff in violation of the Florida Civil Rights Act, Chapter 760, FLA. STAT.

105.

Defendant TriageLogic has discriminated against Plaintiff based on her disability by treating her differently from and less preferably than similarly-situated non-disabled employees and by subjecting her to disparate terms and conditions of employment, and other forms of discrimination on the basis of her disability in violation of the law.

106.

The conduct of Defendant TriageLogic and its agents, and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

107.

The conduct of Defendant TriageLogic was so willful and wanton, and in such reckless disregard of the statutory rights of Plaintiff, as to entitle her to an award of

punitive damages against Defendant TriageLogic, to deter it, and others, from such conduct in the future.

108.

Plaintiff is entitled to recover her reasonable attorneys' fees and litigation expenses pursuant to 760.11(5), FLA. STAT.

109.

Plaintiff has no plain, adequate or complete remedy at law for the actions of Defendant TriageLogic which have caused, and continue to cause, irreparable harm.

## COUNT VI

*(Marital Status Discrimination in Violation of the FCRA)*

110.

Plaintiff incorporates herein by reference paragraphs 1 through 109 of the Complaint.

111.

Defendant TriageLogic , by and through its agents and employees, has discriminated against Plaintiff in violation of the Florida Civil Rights Act, Chapter 760, FLA. STAT.

112.

Defendant TriageLogic has discriminated against Plaintiff based on her marital status by treating her differently from and less preferably than similarly-

situated non-single mothers who did not conceive through intrauterine insemination and by subjecting her to disparate terms and conditions of employment, and other forms of discrimination on the basis of her marital status in violation of the law.

113.

The conduct of Defendant TriageLogic and its customers, agents, and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

114.

The conduct of Defendant TriageLogic was so willful and wanton, and in such reckless disregard of the statutory rights of Plaintiff, as to entitle her to an award of punitive damages against Defendant TriageLogic, to deter it, and others, from such conduct in the future.

115.

Plaintiff is entitled to recover her reasonable attorneys' fees and litigation expenses pursuant to 760.11(5), FLA. STAT.

116.

Plaintiff has no plain, adequate or complete remedy at law for the actions of Defendant TriageLogic which have caused, and continue to cause, irreparable harm.

## COUNT VII

*(Unequal Pay in Violation of the Fla. Stat. Ann. § 448.07)*

117.

Plaintiff incorporates herein by reference paragraphs 1 through 116 of the Complaint.

118.

The acts and practices of Defendant  TriageLogic constitute discrimination against Plaintiff in violation of the Fla. Stat. Ann. § 448.07 by unlawfully paying female employees lower wages than they pay to male employees for equal work requiring equal skill, effort, and responsibility under similar working conditions.

119.

By reason of Defendant TriageLogic's discriminatory pay, Plaintiff is entitled to all remedies available for violations of the Fla. Stat. Ann. § 448.07.

## COUNT VIII

*(Unpaid Overtime Wages in Violation of the FLSA)*

120.

Plaintiff incorporates herein by reference paragraphs 1 through 119 of the Complaint.

121.

At all relevant times, Defendant TriageLogic has been an "employer engaged in interstate commerce," within the meaning of the FLSA.

122.

At all relevant times, Plaintiff was "employed" by the Defendant TriageLogic within the meaning of the FLSA.

123.

During Plaintiff's employment with Defendant TriageLogic , Plaintiff frequently worked in excess of forty (40) hours per workweek and frequently worked after work hours without pay.

124.

The FLSA requires employers to compensate employees who work in excess of forty (40) hours per workweek at a rate no less than 150% of their regular rate of pay.

125.

Defendant TriageLogic has violated FLSA, 29 U.S.C. § 207 by willfully failing to compensate the Plaintiff the applicable overtime wage for all hours that Plaintiff worked in excess of forty (40) per week.

126.

Due to Defendant TriageLogic 's overtime violations, Plaintiff is entitled to recover compensation for unpaid overtime wages; an equal amount in liquidated damages; and Plaintiff's attorneys' fees, costs and disbursements of this action.

## **COUNT IX**

*(Unpaid Wages and Unpaid Overtime Wages*
*in Violation of Fla. Stat. Ann § 448.110)*

127.

Plaintiff incorporates herein by reference paragraphs 1 through 126 of the Complaint.

128.

At all relevant times, Defendant TriageLogic employed Plaintiff within the meaning of the Fla. Stat Chapter 448.

129.

Defendant TriageLogic willfully refused to pay wages to Plaintiff during her employment.

130.

Defendant TriageLogic engaged in the regular practice of not paying Plaintiff the full amount of wages she was entitled too, despite the fact that Plaintiff regularly worked over forty (40) hours per week and was frequently required to attend work events for which she was not compensated at all, let alone at time and a half.

131.

As a result of Defendant TriageLogic's willful failure to compensate Plaintiff the applicable regular rate for all hours worked and failure to pay Plaintiff overtime wages, Defendant has violated Fla. Stat Ch. 448.

132.

By reason of Defendant TriageLogic's unlawful wage practices, Plaintiff is entitled to unpaid wages, an additional equal amount as liquidated damages, prejudgment interest, and reasonable attorneys' fees and costs of this action under Fla. Stat. § 448.08 and § 448.104.

## **COUNT X**
### *(Punitive Damages and Expenses of Litigation)*

133.

Plaintiff incorporates herein by reference paragraphs 1 through 132 of this Complaint.

134.

The actions of Defendant TriageLogic complained of herein evidence such willful misconduct, wantonness, malice, oppression, and an entire want of care which would raise a presumption of conscious indifference to the consequences thereof. Such conduct was committed reckless indifference to Plaintiff's federally protected rights so as to make appropriate the imposition of punitive damages on the Defendant.

135.

An award of reasonable attorneys' fees and costs expended by Plaintiff in the prosecution of this civil action is also appropriate in this civil action in accordance with Title VII and other applicable law.

## DEMAND FOR JURY TRIAL

136.

Plaintiff hereby demands a jury trial of each count of the complaint.

## PRAYER FOR RELIEF

**WHEREFORE,** for the foregoing reasons, it is specifically requested that this Court grant Plaintiff judgment as follows:

A.     On Count I, awarding Plaintiff compensatory and other damages, including punitive damages in an amount to be determined at trial but in any case, no less than $1,000,000.00;

B.     On Count II, awarding Plaintiff compensatory and other damages, including punitive damages in an amount to be determined at trial but in any case, no less than $1,000,000.00;

C.     On Count III, awarding Plaintiff compensatory and other damages, including punitive damages in an amount to be determined at trial but in any case, no less than $1,000,000.00;

D.      On Count IV, awarding Plaintiff compensatory and other damages, including punitive damages in an amount to be determined at trial but in any case, no less than $1,000,000.00;

E.      On Plaintiff's Count V, awarding Plaintiff compensatory and other damages, including punitive damages in an amount to be determined at trial but in any case, no less than $1,000,000.00;

F.      On Plaintiff's Count VI, awarding Plaintiff compensatory and other damages, including punitive damages in an amount to be determined at trial but in any case, no less than $1,000,000.00;

G.      On Plaintiff's Count VII, awarding Plaintiff compensatory and other damages, including punitive damages in an amount to be determined at trial but in any case, no less than $1,000,000.00;

H.      On Plaintiff's Count VIII, awarding Plaintiff compensatory and other damages, including punitive damages in an amount to be determined at trial but in any case, no less than $1,000,000.00;

I.      On Plaintiff's Count IX, awarding Plaintiff compensatory and other damages, including punitive damages in an amount to be determined at trial but in any case, no less than $1,000,000.00;

J.      On Plaintiff's Count X, awarding Plaintiff compensatory and other damages, including punitive damages in an amount to be determined at trial but in any case, no less than $1,000,000.00;

K.      Awarding Plaintiff, the costs and disbursements of this action, including reasonable attorneys' fees, together with such other and further relief as this court deems equitable, proper, and just.

Respectfully submitted this 27th day of November, 2023.

**L F Barnes Law LLC**

*/s/ L'Erin Wiggins*
L'Erin Wiggins, Esq.
Georgia Bar No. 141797
P.O. Box 250464
Atlanta, Georgia 30325
Tel: (404) 680-6498
Fax: (404) 393-5763
Email: lerin@lfbarneslaw.com

**GODDARD LAW PLLC**

*/s/ Megan S. Goddard*
Megan S. Goddard, Esq.
[*Pro Hac Vice*]
39 Broadway, Suite 1540
New York, NY 10006
Telephone: (646) 504-8363
Facsimile: (212) 208-2914
Email: Megan@goddardlawnyc.com

*Attorneys for Plaintiff Candice Tuttle*